# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TRAVELERS CASUALTY AND ) <br> SURETY COMPANY OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) | **MEMORANDUM OPINION AND RECOMMENDATION** <br><br> 1:09CV976 |

This matter is before the court on Plaintiff's motion for summary judgment (docket no. 19). Defendant has responded in opposition, and the matter is ripe for disposition. Since there has been no consent, I must deal with the motion by way of a recommendation. For the reasons discussed herein, I will recommend that Plaintiff's motion be granted and that judgment be entered for Plaintiff.

## I. BACKGROUND

Plaintiff, Travelers Casualty and Surety Company of America ("Travelers"), brought this action pursuant to 26 U.S.C. § 7426 to recover funds in the amount of $71,724.16 levied by the Internal Revenue Service ("IRS") on behalf of Defendant United States of America. As set forth in the Complaint, Travelers asserts that the levy was wrongful because under an order of the United States Bankruptcy Court for the Eastern District of North Carolina, Travelers had sole ownership of the funds.

Travelers seeks a return of the funds, plus repayment of a $100 administrative fee charged by Wachovia, along with interest and attorney's fees.

## II. FACTS[1]

Plaintiff Travelers is a Connecticut company engaged, *inter alia*, in the business of acting as surety on payment and performance bonds for contractors who sign indemnity agreements by which they agree to keep Travelers whole in the event of losses arising as a result of Travelers' provision of such bonds. W. E. Garrison Company, Inc. ("Garrison"), a construction company, executed an indemnity agreement in favor of Travelers on August 27, 1998. Pursuant to that agreement, Garrison assigned Travelers a security interest in all contract funds on projects for which Travelers agreed to provide bond. Travelers thereafter issued bonds on multiple construction contracts entered into by Garrison.

In March 2004, Garrison notified Travelers that it needed assistance completing one or more of its construction projects which were in danger of default. Travelers established a joint control trust account with Garrison at Wachovia National Bank ("Wachovia") in the name of Travelers (the "Trust Account") (account number **7435). The account was set up to receive payment of contract funds on Garrison's projects that Travelers indemnified.

On October 4, 2004, Garrison filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq., in the United States

---

[1] These facts as stated here are not in dispute.

Bankruptcy Court for the Eastern District of North Carolina. Travelers and the IRS were listed as creditors in that bankruptcy. Garrison submitted a Plan of Reorganization ("the Plan") which addressed claims by both Travelers and the IRS. Under the proposed Plan, the funds in the Trust Account were to remain the sole property of Travelers, which would retain the Trust Account funds as an offset to the debt that Garrison owed Travelers. The Plan also addressed and proposed treatment of the IRS claims for taxes to be levied against Garrison. (Compl, Ex. H. Plan of Reorganization at 6). Under the Plan, this secured claim was to be paid by quarterly payments by the Debtor for 120 months. (*Id.* at 7).

On June 1, 2005, a confirmation hearing on the Plan was conducted by the bankruptcy court, and the Plan was confirmed by order dated August 24, 2005. (Compl., Ex. I., Order). The confirmation order specifically treated Travelers' claims:

> This creditor [Travelers] shall retain all possession rights to such sums directed into the above-described trust account pursuant to that certain Trust Agreement entered into by and between Travelers and the Debtor. Specifically, the Debtor asserts that such sums are not property of the estate pursuant to Section 541 of the Bankruptcy Code. All amounts collected by Travelers under the terms of the Trust Agreement shall [be] applied to the reduction of Travelers' claims against the Debtor . . . .

(Order at 5).

After the order was entered, the IRS delivered a Notice of Levy to Wachovia for a pre-petition assessment of taxes that Garrison owed, totaling $71,724.16 for the tax period ending June 30, 2004. The Notice requested funds from a specific

Wachovia account in the name of Travelers.  On July 22, 2008, Wachovia debited the entire amount of the levy, plus a non-refundable processing fee against another, separate account in the name of Travelers (account number **0678).[2]

On August 7, 2008, Travelers, through counsel, sent a letter to IRS official James Bolen requesting that the IRS release the levy.  By letter dated September 23, 2008, Mr. Bolen notified Travelers that the IRS had concluded that it was entitled to levy on the Trust Account and to apply the Funds to Garrison's tax liability.  In the letter, Mr. Bolen informed Travelers that it could dispute the decision of the IRS by sending another letter to Mr. Bolen addressing the basis for Travelers' position.  Counsel for Travelers sent a second letter on September 30, 2008, again requesting a return of the funds levied upon by the IRS.  On November 12, 2008, Mr. Bolen notified Travelers' counsel by email that the IRS was rejecting Travelers' request for release of the funds.

Travelers submitted an Administrative Claim to the IRS by letter dated February 26, 2009, formally requesting a return of the Funds at issue together with the $100 bank fee charged by Wachovia.  The IRS did not respond to the Administrative Claim.  On December 21, 2009, Travelers filed this action alleging wrongful levy by the IRS and requesting a judgment in the amount of $71,724.16, plus interest, attorney's fees and the $100 bank fee imposed by Wachovia.

---

[2] According to Travelers, the levy was debited out of a Wachovia account that Travelers had set up with another party, Wyoming Sand & Stone ("the Wyoming account").  Garrison had no interest in this account.  (Compl. ¶ 24.)

Defendant answered the Complaint on February 22, 2010. On September 15, 2010, Travelers moved for summary judgment.

### III.  DISCUSSION

<u>Summary Judgment Standard of Review</u>

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997).  The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial.  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact-finder to return a verdict for that party.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995).  Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim.  *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting).  When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving

party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

Analysis

The Internal Revenue Code provides that "[i]f a levy has been made on property . . . any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in . . . such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court . . . ." 26 U.S.C. § 7426. This section provides the exclusive remedy for a third party who claims ownership in property levied by the IRS. *E.C. Term of Years Trust v. United States*, 550 U.S. 429, 435-36 (2007).

Travelers argues that the IRS levy was wrongful because the IRS had no right to levy upon the funds that were the sole property of Travelers. I agree. The bankruptcy order clearly provides that Travelers would retain all rights to ownership of the Funds and that Garrison had no interest in the Funds. The Government did not file any objection to this order. Thus, the IRS had no right to levy against the Funds which belonged exclusively to Travelers.

In response to the motion for summary judgment, Defendant argues that the Trust Agreement, referenced in the order, also contained a provision whereby the funds in the trust account would be used for payment of all withholding and payroll taxes and other amounts deducted from employee wages. In certain situations, a statutory trust in favor of the IRS is created at the time payroll taxes are deducted

from employees' paychecks.  *Begier v. I.R.S.*, 496 U.S. 53, 61-62 (1990).  Defendant's reliance on *Begier* as a defense to Plaintiff's claim for wrongful levy is misplaced, however.  *Begier* involved an airline that filed for bankruptcy within 90 days of having made payroll withholding and excise tax payments to the IRS.  The bankruptcy trustee attempted to void those payments as preferences.  The central issue in the case was whether the payments were part of the bankruptcy estate.  The Court in *Begier* held that the Debtor's transfer of funds being held in trust (the tax payments) was not entitled to preference because the funds did not belong to the Debtor.  The funds in *Begier* were held in a statutorily created trust pursuant to 26 U.S.C. § 7501.  As such, the debtor's payments of trust fund taxes from its general operating account were not transfers of "property of the debtor," but were transfers of property held in trust for the United States pursuant to Section 7501, which, therefore, could not be avoided as preferential transfers.

Garrison had no interest in the Funds in this case, which, under the bankruptcy order, were never part of the bankruptcy estate.  At all times Travelers, not Garrison, had control over the Funds.  The IRS was a party to the bankruptcy proceeding and was on notice as to the order.  The time for objection to the order, and the treatment of the Funds, was at the time the order was entered, or through an appeal of the order approving the bankruptcy plan.[3]  The IRS does not dispute

---

[3] I note as well that this case, unlike *Begier*, does not involve a preference claim on account of payments made within 90 days of the filing of the bankruptcy case.  11 U.S.C. § 547(b)(4)(A).

that it neither objected to nor appealed the order. As such, the IRS is barred from now asserting that anyone other than Travelers has a right to the Funds.[4] *See United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1376 (2010) (stating that a bankruptcy court's order confirming proposed plan was a final judgment, which, if not appealed, may not be challenged).

Because the IRS levy of the Trust Account was wrongful, and there exist no genuine issues of material fact, I find that Travelers is entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the court **GRANT** Plaintiff's motion for summary judgment (docket no 19).

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
December 1, 2010

---

[4] I agree with Plaintiff that the order of the bankruptcy court has res judicata effect. Defendant argues that because the issue of whether property is a part of the bankruptcy estate should be raised in an adversary proceeding, which was not done in the case, the order should not have preclusive effect. The court in *Espinosa* put this notion to rest, however, holding that procedural errors (such as not requiring an adversary proceeding) do not void a judgment, particularly where, as here, a party is on notice and fails to object even if the terms are directly contrary to the Bankruptcy Code. All the elements of issue preclusion are present in this case, and Defendant is therefore precluded from collaterally attacking the bankruptcy court's order.